1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   United States of America,                    No. 2:19-CR-37-KJM

12                    Plaintiff,                   ORDER

13        v.

14   Ismael Nieves-Lopez,

15                    Defendant.

16

17          Defendant Ismael Nieves-Lopez moves for compassionate release under 18 U.S.C.

18   § 3582.  Mr. Nieves-Lopez contends his medical conditions, his placement at FCI Lompoc, and

19   the ongoing COVID-19 pandemic create extraordinary circumstances supporting his early release.

20   The government opposes. For the reasons below, the court **grants** the motion.

21   **I.      BACKGROUND**

22          A grand jury indicted Mr. Nieves-Lopez on one count of being a deported individual

23   found in the United States in violation of 8 U.S.C. § 1326, and one count of possession of a

24   controlled substance in violation of California Health and Safety Code § 11378.  Indictment,

25   ECF No. 6.  He pleaded guilty to count one before this court.  Mins. for Change of Plea Hr'g,

26   ECF No. 11; Plea Agreement, ECF No. 12.  Mr. Nieves-Lopez has a history of arrests and

27   convictions for possession and transportation of controlled substances, driving under the

28   influence, and unlawful reentry into the United States.  Presentence Rep. ("PSR") ¶¶ 28–40,

1    ECF No. 10.  In light of his criminal history, among other sentencing factors, the court sentenced

2    Mr. Nieves-Lopez to 63-months' imprisonment to be followed by 36-months' of supervised

3    release in the event he is not deported after serving his prison term; if deported, the term of

4    supervised release will convert to unsupervised release.  J. and Commitment 2–3, ECF No. 13.

5    The court also ordered Mr. Nieves-Lopez to pay a $100 special assessment.  *Id.* at 5.  He is under

6    an Immigration and Customs Enforcement (ICE) detainer, PSR at 1, meaning the court need not

7    consider the details of his release plan as he will be deported and therefore on unsupervised

8    release.  If his motion is granted, he intends to return to Mexico and enter drug treatment.

9    Mot.at 2, ECF No. 14.  He will live with family who intends to support him until he finds

10   employment.  *Id.*

11           Mr. Nieves-Lopez is assigned to FCI Lompoc.  Opp'n at 3, ECF No. 19.  With application

12   of his good time credits his projected release date is September 2, 2023; thus, he has served about

13   34 percent of his sentence.  *Id*.  He has a history of disciplinary infractions while at FCI Lompoc,

14   which are summarized as involving use of drugs and alcohol, possessing an unauthorized needle,

15   and assault without resulting serious injury.  *See* Opp'n Ex. 3 (Inmate Discipline Data),

16   ECF No. 19-1.

17           Mr. Nieves-Lopez has benign essential hypertension, hyperlipidemia, prediabetes, chronic

18   gastritis and gastroesophageal reflux disease ("GERD").  Opp'n Ex. 2 (Medical Records) (under

19   seal).[1]

20           Mr. Nieves-Lopez moves for compassionate release under 18 U.S.C. § 3582(c).  Mot.,

21   ECF No. 14; Reply, ECF No. 21.  The government opposes his motion.  Opp'n, ECF No. 19.

22   **II.    LEGAL STANDARD**

23           The district court that imposed a sentence on a criminal defendant has authority to modify

24   the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as

---

        1 The court **grants** the parties' requests to file portions of Mr. Nieves Lopez's medical
records under seal to protect his private medical information.  *See Chester v. King*, No. 1:16-
01257, 2019 WL 5420213, at *2 (E.D. Cal. Sep. 10, 2019) ("This court, and others within the
Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling
reason' for sealing records.").

amended by the First Step Act of 2018.[2]  Under the statute, a court may grant a defendant's motion to reduce his prison term, provided the defendant first satisfies an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A), 3582(c)(1)(A)(i).  Once the defendant has exhausted administrative remedies, the analysis is twofold.  First, the court must find "extraordinary and compelling reasons" to release a defendant from BOP custody.  18 U.S.C. § 3582(c)(1)(A).  Second, the court must consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought.  *Id*.

The statute further requires "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id*. § 3582(c)(1)(A).  In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody, which was last amended November 1, 2018.  *See* U.S.S.G. § 1B1.13.  Since the passage of the First Step Act, district courts have disagreed whether U.S.S.G. § 1B1.13 remains binding.  This court, as it has in previous cases, considers the Sentencing Commission's policy statement as guidance, without determining whether it is binding in this context.  The court notes as relevant here that, in addition to listing possible "extraordinary and compelling reasons," section 1B1.13 "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community."  *United States v. Numann*, No. 16-00025, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

III.   **ANALYSIS**

The parties do not dispute that Mr. Nieves-Lopez has exhausted his administrative remedies as required by § 3582(c).  *See* Opp'n at 4.  The court thus considers whether Mr. Nieves-Lopez's motion is supported by extraordinary and compelling reasons and the sentencing factors of § 3553(a).

/////

---

[2] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

3

1      **A.      Extraordinary and Compelling Reasons**

2          The government argues Mr. Nieves-Lopez has not shown extraordinary and compelling

3   reasons and discounts the risk Mr. Nieves-Lopez's hypertension presents.  In doing so the

4   government points out that his condition is properly controlled by his medication.  Opp'n at 9.

5   Additionally, the government claims Mr. Nieves-Lopez's benign essential hypertension does not

6   warrant his early release because the CDC has found  pulmonary hypertension definitively

7   presents a higher risk for COVID-19 complications, while benign essential hypertension only

8   "might" increase risk.  Opp'n at 9 (citing Center for Disease Control and Prevention (CDC),

9   *Coronavirus Disease 2019 (COVID-19), People Who Are at Higher Risk*[3]; CDC, *Clinical*

10   *Questions about COVID-19: Questions and Answers, "Patients with Hypertension"*[4]("people

11   whose only underlying medical condition is hypertension might be at increased risk  for severe

12   illness from COVID-19"); CDC, *People with Certain Medical Conditions*[5] ("[H]eart conditions

13   [including pulmonary hypertension] increase[ ] your risk of severe illness from COVID-19 . . . .

14   [O]ther cardiovascular or cerebrovascular disease, such as hypertension (high blood pressure) . . .

15   might increase your risk of severe illness from COVID-19").

16          The court acknowledges that some other courts, in considering defendants with

17   hypertension, have found benign essential hypertension alone cannot support compassionate

18   release.  *United States v. Thomas*, 471 F. Supp. 3d 745, 749 (W.D. Va. 2020) ("During the

19   pandemic, courts in this district and across the country have released individuals suffering from

20   hypertension, but only when these individuals also suffered from other underlying medical

21   conditions."); *United States v. Brown*, No. 3:13-14, 2020 WL 3511584, at *6 (E.D. Tenn. June

22   29, 2020) ("the CDC only identifies pulmonary hypertension, not essential hypertension, from

23   which defendant suffers [ ], as increasing the risk for severe COVID-19 infection.").  This court

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

[4] https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Hypertension

[5] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

1   has, however, as have some other courts, granted release when a defendant had hypertension that

2   was not specifically identified as pulmonary hypertension.  *See, e.g., United States v. Richardson*,

3   No. 17-00048, 2020 U.S. Dist. LEXIS 108043, at *8 (E.D. Cal. June 19, 2020) ("Defendant's

4   hypertension alone places him at significant risk of complications."); *United States v. Sanders*,

5   No. 19-20288, 2020 U.S. Dist. LEXIS 67595, at *10 (E.D. Mich. Apr. 17, 2020) ("Several courts

6   . . . have identified hypertension as an underlying medical condition that renders a prisoner

7   higher-risk, weighing against continued detention during the COVID-19 pandemic."); *United*

8   *States v. Terraciano*, No. 2:17-00187-2, 2020 WL 5878284, at *4 (E.D. Cal. Oct. 2, 2020)

9   (collecting cases); *United States v. Tamasoa*, No. 2:15-0124, 2020 WL 6700416, at *3 (E.D. Cal.

10  Nov. 13, 2020) (finding defendants "stage 1 hypertension" supported release).  Given that the

11  medical evidence indicates defendant's benign essential hypertension still might increase his risk,

12  CDC, *People with Certain Medical Conditions*, the court finds Mr. Nieves-Lopez's hypertension

13  weighs in favor of finding extraordinary and compelling circumstances.

14          Also, as this court previously has noted, the coronavirus outbreak at FCI Lompoc has been

15  one of the worst in the nation.  *United States v. Robinson*, ___ F. Supp. 3d ___, 2020

16  WL 1982872, at *1 (N.D. Cal. Apr. 27, 2020); *United States v. Curtiss*, 467 F. Supp. 3d 96 (W.D.

17  N.Y. 2020); *United States v. Purry*, No. 14-00332, 2020 WL 2773477, at *2 (D. Nev. May 28,

18  2020); BOP, *COVID-19 Cases*.[6]  Some time ago, the court in *United States v. Pickard* expressed

19  skepticism regarding the "suggestion that more than 900 active infections were resolved within

20  two weeks."  2:11-00449, 2020 WL 4227510, at *4 (E.D. Cal. July 23, 2020); *United States v.*

21  *Schweder*, No. 2:11-00449, 2020 WL 5257598, at *5 (E.D. Cal. Sept. 3, 2020) (same; collecting

22  cases).

23          As of this writing FCI Lompoc reports zero cases among the incarcerated population, two

24  confirmed staff cases and 664 incarcerated individuals as "recovered" from the virus.  BOP,

25  *COVID-19 Cases* (accessed Jan. 14, 2021).  The government provides no evidence to suggest

26  BOP's measures have improved or are proving more effective now than in the past in preventing

---

[6] https://www.bop.gov/coronavirus/ (updated daily) (accessed Dec. 18, 2020).

1   COVID-19 exposure to inmates.  *See* Dep't of Justice Pandemic Response Report.[7]  At the time

2   this motion was briefed, USP Lompoc was reporting only one incarcerated person and one staff

3   member tested positive for COVID-19.  Opp'n at 5 (citing BOP, *COVID-19 Coronavirus*[8]).  At

4   this time, USP Lompoc is reporting forty-two confirmed cases among incarcerated individuals

5   and ten confirmed staff cases.  BOP, *COVID-19 Cases* (accessed Jan. 14, 2021). USP Lompoc is

6   the federal prison camp that is "part of a larger complex with FCI Lompoc", *Schweder*, 2020

7   WL 5257598, at *1, and courts have noted the "possibility of staff rotating between USP Lompoc

8   and FCI Lompoc as creating likelihood of infection," *id*. at *5 (citing *United States v. Kamaka*,

9   No. 18-00085, 2020 WL 2820139, at *3–4 (D. Haw. May 29, 2020)).  Although there are no

10  cases reported at FCI Lompoc at this moment, the court errs on the side of caution considering

11  COVID-19's persistence, the potential for rapid spread and the questions raised regarding testing,

12  reporting and the provision of medical care at Lompoc.  The court thus finds Mr. Nieves-Lopez's

13  current placement also weighs in favor of release.

14          **B.    Sentencing Guidelines**

15          The Sentencing Guidelines instruct "the [c]ourt should consider the sentencing factors set

16  forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and the [c]ourt

17  should not grant a sentence reduction if the defendant poses a risk of danger to the community, as

18  defined in the Bail Reform Act."  *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1196 (E.D.

19  Wash. 2020) (citing U.S.S.G. § 1B1.13); see also 18 U.S.C. § 3582(c)(1)(A).  "In assessing

20  danger, physical violence is not the only form of danger contemplated by the statute.  Danger to

21  the community can be in the form of continued narcotics activity or even encompass pecuniary or

22  economic harm."  *United States v. Zaragoza*, No. 08-0083, 2008 WL 686825, at *3 (N.D. Cal.

23  Mar. 11, 2008)).  Here, Mr. Nieves-Lopez's crime was nonviolent.  The government points to

24  Mr. Nieves-Lopez's criminal history, which includes arrests and convictions for felony

---

[7] Remote Inspection of Federal Correctional Complex Lompoc, issued July 23, 2020. https://oig.justice.gov/reports/remote-inspection-federal-correctional-complex-lompoc (accessed October 2, 2020) (documenting shortage of medical staff at FCI and USP Lompoc and ineffective COVID-19 screening and isolation process at both facilities).

[8] https://www.bop.gov/coronavirus/.

1    possession of controlled substances, felony possession for sale of a controlled substance, felony

2    transportation of a controlled substance, driving under the influence, domestic violence and being

3    a deported alien found in the United States.  Opp'n at 12; PSR ¶¶ 28–40.  The government also

4    cites to Mr. Nieves-Lopez's continued pattern of misconduct evidenced by his history of

5    discipline at Lompoc. *See generally* Inmate Discipline Data.

6         The majority of Mr. Nieves-Lopez's crimes and disciplinary infractions are nonviolent

7    and a number appear to be related to the substance abuse issues he says he will be seeking

8    treatment for once back in Mexico with the support of his family.  *Cf. United States v. Dailey*, No.

9    2:13-00118, 2020 WL 4504449, at *4 (E.D. Cal. Aug. 5, 2020) ("While defendant's criminal

10   history is extensive, it is primarily drug-related and is non-violent in nature. . . . While it is a close

11   call, the court determines defendant does not pose a danger to the community").  On this record,

12   the court finds he is not a danger.

13        The government argues reducing Mr. Nieves-Lopez's sentence to time served would

14   effect too significant of a reduction in his prison term.  Opp'n at 13.  "Courts have been willing to

15   grant release in spite of a short amount of time served where a defendant's health conditions rose

16   to the level of an 'extraordinary and compelling' reason."  *United States v. Galaz*,

17   ___ F. Supp. 3d ___, 2020 WL 4569125, at *6 (S.D. Cal. Aug. 7, 2020) (collecting authority and

18   granting motion for compassionate release to inmate who had served only 14 months of her

19   48-month sentence); *see also, e.g., United States v. Fowler*, 445 F. Supp. 3d 452, 452 (N.D. Cal.

20   2020) (granting release for defendant who had served 11 months of 60 month sentence); *United*

21   *States v. Castillo*, No. 08-146, 2020 WL 2820401, at *5 (S.D. Tex. May 29, 2020) (granting

22   release for defendant who had served 12 years of life sentence); *United States v. Barber*,

23   No. 18-0446, 2020 U.S. Dist. LEXIS 83457, at *13 (D. Or. May 12, 2020) (granting release for

24   defendant who had served less than one year of five-year sentence).  Here, the court finds the

25   sentence reduction resulting from granting the pending motion does not weigh against Mr.

26   Nieves-Lopez's release.

27   /////

28   /////

7

**IV.   CONCLUSION**

The motion for compassionate release is **granted**.  Given that Mr. Nieves-Lopez is subject to an immigration detainer, the court does not make any particular orders regarding release or quarantine because he will be released to the custody of ICE subject to any quarantine protocols being implemented by the Bureau of Prisons prior to transfer to ICE.

Defendant's motion to seal is **granted.**

The government's motion to seal is **granted.**

This order resolves ECF No. 14, 15, 20.

IT IS SO ORDERED.

DATED:  January 15, 2021.

CHIEF UNITED STATES DISTRICT JUDGE